IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FREDERICK B., <br><br> Claimant, <br><br> v. <br><br> LELAND DUDEK, <br> Acting Commissioner of Social Security, <br><br> Respondent. | No. 22 C 4229 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Frederick B.[1] ("Claimant") seeks judicial review of the final decision of the Acting Commissioner of the Social Security Administration[2] ("Commissioner"), denying his request for a period of disability, disability insurance benefits and supplemental security income for a closed period of time from December 6, 2010 through October 18. 2016. Pursuant to Local Rule 40.3(c), this case was assigned directly to this United States Magistrate Judge because this Judge remanded the previously dismissed related case for further administrative proceedings.[3] *See Barr*

---

[1] In accordance with Northern District of Illinois Local Rule 8.1, the Court refers to Claimant only by his first name and the first initial of his last name.

[2] Leland Dudek was appointed as the Acting Commissioner of Social Security on February 16, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is automatically substituted as the named defendant in this case.

[3] Northern District of Illinois Local Rule 40.3(c) provides: "In a proceeding for judicial review of a final decision by the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g), when a district judge or magistrate judge remands the case for further administrative proceedings, any subsequent proceedings in the district court involving that matter shall be assigned to the district and magistrate judge to which the preceding action for judicial review was originally assigned."

1

*v. O'Malley*, Case No. 20 C 2371 (N.D. Ill). After reviewing the record and the parties' briefs, the Court denies Claimant's Memorandum in Support of Summary Remand [ECF No. 15] and grants the Commissioner's Motion for Summary Judgment [ECF No. 17]. The decision of the Commissioner is affirmed.

## BACKGROUND

### I. Procedural History

This case has an extensive procedural history in both the Social Security Administration and federal court.[4] Claimant initially filed applications for disability insurance benefits and supplemental security income on March 2, 2011, alleging a disability beginning December 6, 2010. (R.25). Claimant's application were denied initially at the administrative level (R.25-35) and remanded after the first judicial review (R.555-64). Eventually, on August 7, 2018, Claimant was found to be disabled as of October 19, 2016, but not earlier. (R.458-72). Claimant again sought judicial review of the decision finding him not disabled prior to October 19, 2016. After Claimant filed another lawsuit in federal court and at the parties' request, this Court granted their agreed motion to remand the case to the Commissioner of the Social Security Administration and ordered the Appeals Council to affirm the Commissioner's decision finding Claimant disabled as of October 19, 2016 and to remand the case to an Administrative Law Judge ("ALJ") for a new hearing and decision on the period prior to October 19, 2016. (R.1223-25); *see Barr v. O'Malley*,

---

[4] The Court assumes familiarity with the procedural history of this case in both the Social Security Administration and federal court and will not recount all of the administrative hearings and prior civil actions in this Opinion.

Case No. 20 C 2371, 2/2/2021 Order [ECF No. 33]. The Appeals Council assigned this case to a new ALJ and directed the ALJ to conduct all necessary proceedings to reevaluate the record, medical opinions, and Claimant's symptoms consistent with the Appeals Council's Order. (R.1228-30).

The only period at issue at this time is December 6, 2010 (Claimant's alleged disability onset date) through October 18, 2016. (R.1128).[5] The ALJ held a telephonic hearing on August 5, 2021, and all parties participated by telephone. (R.1128). Claimant testified at the hearing and was represented by counsel, and a vocational expert also testified. (R.1128). On August 31, 2021, the ALJ issued her decision, finding Claimant was not under a disability as defined by the Social Security Act from December 6, 2010 through October 18, 2016. (R.1128-45). The Appeals Council denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner. Claimant then filed another lawsuit, seeking again judicial review of the Commissioner's decision, and this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## II. The ALJ's Decision

Under the Social Security Act, disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42

---

[5] As the ALJ noted in her decision and this Court reiterates, the ALJ's decision and this Court's Memorandum Opinion and Order affirming that decision does not alter the earlier decision that Claimant became disabled on October 19, 2016. (R.1128).

3

U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform any past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

Applying the five-part test in this case, the ALJ found at step one that Claimant had not engaged in substantial gainful activity since December 6, 2010, the alleged disability onset date. (R.1131). At step two, the ALJ found Claimant had the following severe impairments: degenerative joint disease of the right knee; arthritis of the right shoulder; obesity; and gout. (R.1131). At step three, the ALJ found that none of Claimant's impairments met or equaled any listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 426.926. (R.1132). Before step four, the ALJ determined:

4

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except avoid climbing ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; occasionally climb ramps and stairs; occasionally reach overhead with the right upper extremity, which is the non-dominant hand; frequent reaching in all other directions bilaterally; can tolerate occasional exposure to extreme cold and vibration and weather; avoid all exposure to dangerous moving machinery and unprotected heights; and no commercial driving.

(R.1133). At step four, the ALJ found that Claimant was not able to perform any previous work. (R.1143). At step five, the ALJ found there were other jobs in the national economy that Claimant could perform based on the testimony of the vocational expert who opined that Claimant could perform the jobs of address clerk, order clerk, and account clerk. (R.1144). Based on these findings, the ALJ concluded Claimant was not disabled from December 6, 2010 through October 18, 2016. (R.1144-45).

## DISCUSSION

### I. Judicial Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision, therefore, is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standard in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other

5

contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is ... 'more than a mere scintilla.' ... It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). More specifically, the Seventh Circuit stated:

> All we required is that ALJs provide an explanation for how the evidence leads to their conclusions that is "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." … At times, we have put this in the shorthand terms of saying an ALJ needs to provide a "logical bridge from the evidence to his conclusion."

*Id.* at 1054 (citations omitted). When conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990); *see also Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict.") (internal quotations and citation omitted). The court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Skinner v.*

6

*Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

## II.     Analysis

Claimant's only argument challenging the ALJ's decision in this case is that the ALJ erred in her assessment of Claimant's subjective symptoms. When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5-8. "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). "Patently wrong" means that the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (emphasis in original).

When addressing her subjective symptom analysis in this case, the ALJ explained:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the objective evidence does not support the claimant has any greater work limitations than provided in the residual functional capacity. The

> medical and other evidence of record does not generally support the claimant's alleged loss of functioning. As discussed, the claimant has participated in very little conservative treatment with extensive gaps in treatment that are not consistent with his complaints. He testified to having insurance under the affordable care act in 2013/2014 but still he had little treatment, which is inconsistent with his complaints. His explanation of lack of treatment of not being able to find an orthopedic physician that would accept his County Care/Obama Care insurance is not persuasive. Moreover, when he presented for treatment or exams, his clinical exam findings were inconsistent with his extensive limitations including his limitations in walking, standing and lifting. He had findings within normal limits (Exhibits 5F/11). On physical consultative exam, he had a normal gait and normal strength (Exhibit 3F). Other than obesity, his primary care exams were unremarkable (Ex. 21F/40). He had non-focal neurological exam (Ex. 21F/33, 30). He had normal range of motion of all joints (Ex. 21F/30). At his February of 2012 orthopedic visit, his bilateral upper extremity exam showed full range of motion (Ex. 10F/2). He had intact gross motor and sensory exam. His right knee exam showed no pain or crepitus. He had full active and passive flexion and extension of the bilateral knees. He had stable ligamentous knee exam bilaterally. His exam did show tenderness findings to the right knee. He had x-rays that showed severe arthritis. Despite his knee pain complaints to his primary care physician, he presented in no acute distress (Ex. 21F/28, 30). He had non-focal neurological exam. He had normal range of motion of all joints. His objective findings and pain complaints were considered in reducing him to sedentary work. This reduced exertional work considers his pain may affect his ambulation (Ex. 10F).

(R.1138-39). Claimant argues that the ALJ erred in assessing his subjective symptoms and discounting his complaints and that her analysis is not supported by the record. Claimant's Brief [ECF No. 15], at 8-15. The Court is not persuaded by Claimant's arguments.

As set forth above, this Court must give "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d at 528. And "patently wrong" means that "the decision lacks any explanation or support." *Murphy*, 759 F.3d at 816. This is a high burden to overcome. Claimant

8

argues that the ALJ did not properly assess his daily activities and the pain he experienced. The Court, however, cannot reasonably say that the ALJ's decision lacks any explanation or support. The ALJ discussed the medical record, Claimant's course of treatment, his daily activities, and his complaints concerning pain, and she provided reasons with citations to the record for her conclusions that Claimant was capable of a restricted range of sedentary work despite his allegations of knee and shoulder pain. The ALJ concluded in relevant part:

> [T]he claimant has the above residual functional capacity assessment, which is supported by his limited conservative treatment for his impairments with gaps in treatment (Ex. 10F; 15F; 17F; 21F) He complaints [sic] of right shoulder and right knee pain but he does not follow up with treatment recommendations. He currently still has not gone for any right knee replacement surgery, which is eleven years after his alleged onset date. He chose this option as he testified that he has been apprehensive about having surgery. Again, he engages in activities (Ex. 21F). His objective clinical exam findings when he presented for treatment did not suggest any greater work limitations than sedentary work and the additional limitations provided in the residual functional capacity, which is consistent with Dr. Munoz's medical opinion at his last hearing.

(R.1142-43). The Court does not find any reversible error in the ALJ's assessment or how she evaluated Claimant's treatment history, daily activities, or pain.

Claimant contends that the ALJ improperly assessed his daily activities and pain. The Court disagrees and finds that the ALJ did not equate Claimant's daily activities with an ability to work full time. Rather, the ALJ reasonably concluded that Claimant's asserted impairments were not as severe and limiting as he alleged. *See Darryl S. v. Kijakazi*, 2023 WL 3169617, at *4 (N.D. Ill. Apr. 28, 2023). The ALJ cited to (and relied upon) Claimant's 2018 statement that he walked for exercise, could perform his usual activities, and did not require any help in becoming more active.

9

(R.1140). In the Court's view, the ALJ's explanation could have been more fulsome, but the law is clear that an ALJ's analysis does not need to be flawless to be supported by substantial evidence. *See Halsell*, 357 F. App'x at 722-23. The Court also is not persuaded by Claimant's argument that he needed to elevate his leg throughout the day and agrees with the ALJ that Claimant does not cite to any objective evidence in the record that corroborated his claim. (R.1135).

As to Claimant's pain, the ALJ appropriately acknowledged that Claimant experienced pain and noted that he sometimes walked with an antalgic gait and other times with a normal gait despite complaints of constant pain, and she also noted that he never used an assistive device for walking. (R.1141). The ALJ also observed that Claimant consistently presented to physicians without acute distress despite his complaints of constant knee pain. (R.1138-39). In the Court's view, the ALJ recognized Claimant's pain symptoms throughout her decision and the symptom analysis quoted above encompasses some of those allegations, and the ALJ accommodated Claimant's symptoms by limiting him to a restricted range of sedentary work. (R.1133).

As to the ALJ's comments about Claimant's conservative treatment, it is not reversible error for an ALJ to note that an individual with allegedly extreme limitations in his functioning did not seek or require more aggressive interventions to manage his condition.[6] The Court finds it was not unreasonable or reversible error

---

[6] *See Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) ("[T]he ALJ did not err in considering that Prill received conservative treatment."); *Lisa G. v. Kijakazi*, 2022 WL 4272782, at *4 (N.D. Ill. Sept. 15, 2022) ("[T]he ALJ adequately explained her rationale behind limiting

10

for the ALJ to conclude that Claimant's reports were insufficient to explain a total lack of treatment for pain he alleged was constant and disabling. (R.1135-40). Claimant specifically faults the ALJ for not crediting Claimant's argument that he did not have insurance to pay for surgery during the relevant time. But the ALJ considered that argument and noted that Claimant "testified to having insurance under the affordable care act in 2013/2014 but still he had little treatment." (R.1139). The ALJ also noted Claimant chose not to have surgery because "he has been apprehensive about having surgery." (R.1143).

Overall, the ALJ discussed and analyzed Claimant's alleged symptoms at length throughout her opinion in conjunction with her evaluation of the medical evidence. (R.1138-40). The Court finds the ALJ reasonably determined that Claimant's alleged symptoms were not fully corroborated by the record and that is a reasonable conclusion for the ALJ to draw on this record. *See Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) ("Because the ALJ's weighing of [claimant's] reported symptoms in the context of the whole record is supported by substantial evidence, we find no reversible error on this front either.").[7] And even if this Court would have

---

Plaintiff to light work with additional limitations. It was not error for the ALJ to have considered Plaintiff's conservative course of treatment when coming to this conclusion.").

[7] *See also Atkins v. Saul*, 814 F. App'x 150, 155 (7th Cir. 2020) ("Here, the ALJ otherwise explained his conclusion adequately. He explained that the objective medical evidence and Atkins's daily activities did not corroborate his subjective symptoms."); *Prill v. Kijakazi*, 23 F.4th 738, 750 (7th Cir. 2022) ("Substantial evidence supports the AL's determination that Prill's account of her subjective symptoms was not consistent with her medical records."); *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) ("[T]he ALJ's credibility determination was not 'patently wrong,' because she found [claimant] not credible for several reasons that were adequately supported by the record.") (citation omitted); *cf. Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020) ("The ALJ's rationale here was thin, but it was adequate to reflect

11

evaluated some of the evidence differently, the Court is not permitted second guess the ALJ's conclusions or reweigh the evidence. *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022) ("When [the plaintiff] criticizes the ALJ's analysis of her daily functioning, her good and bad days, and her pain, she is ... inviting us to reweigh the evidence.").

In the Court's view, the ALJ analyzed the record wholistically and determined that despite Claimant's subjective symptoms and complaints, he was able to perform sedentary work with the RFC outlined above during the relevant period at issue between December 2010 and October 2016. And as the Commissioner noted in his brief, the ALJ relied on the opinion of a medical expert, who reviewed the relevant evidence and opined that Claimant was capable of a range of sedentary work, and Claimant did not submit a contrary opinion.[8] The ALJ at least minimally articulated her reasoning and accounted for Claimant's limitations, and there is enough evidence in the record on which the ALJ relied that supports her determination that Claimant's alleged symptoms were not as limiting as he alleged. For all of these reasons, the Court finds that the ALJ's subjective symptom analysis is not patently wrong, and therefore, a remand is not warranted on this basis.

---

her conclusion that the objective medical evidence and Lacher's daily activities did not corroborate his subjective symptoms.").

[8] *See Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) ("A fundamental problem is [claimant] offered no opinion from any doctor to set [ ] limits ... greater than those the ALJ set."); *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("[T]here is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ.").

## CONCLUSION

Accordingly, for all of the reasons set forth above, Claimant's Memorandum in Support of Summary Remand [ECF No. 15] is denied, and the Commissioner's Motion for Summary Judgment [ECF No. 17] is granted. The decision of the Commissioner is affirmed, and this case is closed.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: April 15, 2025